O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KELSEY DRU GLEGHORN,                 ) NO. CV 12-7709-MMM (MAN)
                                     )
                    Petitioner,      )
                                     )
        v.                           ) ORDER TO SHOW CAUSE RE:
                                     ) DISMISSAL FOR UNTIMELINESS
K.R. CHAPPELL, WARDEN,               )
                                     )
                    Respondent.      )
_____  )

        Petitioner, a California state prisoner, filed a habeas petition pursuant to 28 U.S.C. § 2254 on September 10, 2012 ("Petition"). Petitioner alleges that:  on April 29, 2004, he was convicted by a jury of a "3rd Strike Burglary"; and on June 3, 2004, he was sentenced to 40 years to life in state prison.  (Petition at 1.)

        The Petition alleges five claims attacking the validity of Petitioner's 2004 sentence.  Ground One asserts that Petitioner's counsel provided ineffective assistance by failing to make a *Romero* motion, *i.e.*, to strike one or more of Petitioner's prior "strike" convictions.  Ground Two alleges that one of the prior convictions found

1  to constitute a "strike" (a California Penal Code § 243(d) battery of

2  which Petitioner was found guilty in Ventura County Superior Court Case

3  No. CR-20211) is not a "strike" for purposes of California Penal Code

4  § 667.5.[1]  Ground Three alleges that this same battery conviction cannot

5  constitute a "strike," because it was not a felony conviction.  Ground

6  Four alleges that California's Three Strikes law is unconstitutional,

7  because "it allows judges not juries to increase sentences on facts not

8  founded [*sic*] by a jury."  Finally, Ground Five alleges that Petitioner

9  has been deprived of due process and equal protection, because in

10  capital cases, juries determine the penalty to be imposed.  (Petition at

11  5-6.)

12

13                         **BACKGROUND**

14

15      As the California Court of Appeal found in connection with

16  Petitioner's present conviction, Petitioner's "criminal history spans 25

17  years and includes three prison terms and at least 13 commitments to

18  jail."  People v. Gleghorn, 2006 WL 852366, at *4 (Cal. App. 2 Dist.

19  April 4, 2006).  The Court need not recount the details of Petitioner's

20  full criminal history to resolve the instant Petition.  Rather, the

21  Court focuses on the two convictions implicated by the Petition's

22  allegations, namely, Petitioner's earlier battery conviction and the

23  present conviction he sustained in 2004.

24

25      In Ventura County Superior Court Case No. CR-20211, in or about

26

27      [1]    Petitioner alleges that the jury that convicted him of battery
       also found him "not guilty" of inflicting great bodily injury in
28  connection with the battery.  (Petition at 5; *see* attached exhibits from
       Case CR-20211.)

1985, Petitioner was convicted of two crimes based on the following
facts:

Melody Downes shared her house with several persons, including
[Petitioner].  She rented her garage to Michael Fairall for
$150 per month.  She believed he was to give her a stereo as
part of the rent.  He believed her intent was only to borrow
it.  He asked for the return of the stereo; she said she sold
it.

Fairall, a man of obvious sensitivity, smashed all the
windows of her automobile, slashed the tires, and dented the
body.  Not quite mollified, he kicked in her locked door,
scattered her belongings in the bedroom, and broke an
aquarium, freeing her snake.  (It was scotched, not killed.
See Macbeth, W. Shakespeare.)  Ms. Downes advised [Petitioner]
of Fairall's behavior; he apparently took umbrage.  On the
fateful night in question, Fairall, having quaffed a few, went
to the garage he called home and then to bed, a mattress laid
upon a lofty perch in the rafters.  He was rudely awakened by
a pounding on the garage door accompanied by [Petitioner's]
request that he come out so that [Petitioner] might kill him.
Fairall wisely advised him that they could exchange
pleasantries in the morning.

Undeterred, [Petitioner] opened the garage door, entered
with stick in hand and began beating on the rafters, yelling
for Fairall to come down.  In the darkness, Fairall claimed he

3

1    could see sparks where the board hit the rafters.
2    [Petitioner] said that if Fairall did not come down, he would
3    burn him out.  No sooner said than done, [Petitioner] set a
4    small fire to some of Fairall's clothes.

5

6        Fairall, who happened to have secreted a bow and quiver
7    of arrows in the rafters to prevent its theft, loosed one but
8    did not see where it landed.[]  Fairall, abandoning his
9    weapons, swung down from the rafters and was immediately hit
10   from behind.  He yelled for someone to bring a hose and
11   attempted to extinguish the fire with his hands.  Meanwhile,
12   [Petitioner], in an ill humor from the gash in his back caused
13   by the arrow, continued to beat him, causing a two-inch-wide
14   vertical break in Fairall's lower jaw, tearing his lips,
15   knocking out six to ten teeth, mangling two fingers, and
16   lacerating his arm, stomach and back.  Fairall also suffered
17   burns on the palms of his hands.

18

19   People v. Gleghorn, 193 Cal. App. 3d 196, 199-200, 238 Cal. Rptr. 82
20   (1987).  The California Court of Appeal affirmed Petitioner's
21   convictions for both simple assault, based on Petitioner's conduct
22   before he was shot with the arrow (count I, California Penal Code §
23   245(a)(1)), and battery with the infliction of serious bodily injury,
24   based on Petitioner's conduct once Fairall came down from the rafters
25   (count II, California Penal Code § 243(d))(hereafter, the "Battery
26   Conviction").  Id. at 200-02.

27

28       Petitioner's present conviction stems from a burglary he committed

4

in 2001 (Ventura County Superior Court Case No. 2002013059, hereafter, the "Current Conviction").  Petitioner was convicted following a jury trial, and he admitted he had suffered three prior serious or violent felony "strike" convictions.  Petitioner's criminal history included convictions for involuntary manslaughter and two counts of first degree burglary, as well as the above-noted Battery Conviction.  People v. Gleghorn, 2006 WL 852366, at *1, *4.  Petitioner's counsel made a Romero motion to strike Petitioner's prior convictions, which the trial court denied.  Id. at *3.

Petitioner appealed the Current Conviction, and on April 4, 2006, the California Court of Appeal affirmed the judgment.  People v. Gleghorn, 2006 WL 852366, passim.  While his appeal was pending, Petitioner, on a pro se basis, filed five habeas petitions in the California Court of Appeal, each of which was denied on April 4, 2006 (Case Nos. B178499, B180309, B181609, B181793, and B185539).[2] Petitioner, on a pro se basis, sought review in the California Supreme Court, and on June 14, 2006, the state high court denied his petition for review (Case No. S143306).

After the Current Conviction became final on appeal, Petitioner, on a pro se basis, pursued relief in the California Court of Appeal in

_____

[2]     Pursuant to Rule 201 of the Federal Rules of Evidence, the Court has taken judicial notice of the official dockets of the California Court of Appeal and the California Supreme Court available electronically at http://appellatecases.courtinfo.ca.gov.

        In addition to the five pro so habeas petitions filed by Petitioner while his appeal was pending, he earlier had sought habeas relief in the California Court of Appeal, on a pro se basis, while his trial was pending; his petition was denied on March 10, 2004 (Case No. B173580).

connection with several different Los Angeles Superior Court cases.  On December 27, 2006, Petitioner filed a notice of appeal from a November 7, 2006 order in Los Angeles Superior Court Case No. BC344397; on January 18, 2007, the California Court of Appeal dismissed his appeal (Case No. B195761).  On February 6, 2007, Petitioner filed a habeas petition in connection with Los Angeles Superior Court Case No. BH004376; on February 23, 2007, the California Court of Appeal denied the petition (Case No. B196576).  On July 20, 2007, Petitioner filed a notice of appeal from a June 25, 2007 order in Los Angeles Superior Court Case No. BC344397; on September 4, 2007, the California Court of Appeal dismissed his appeal (Case No. B200681).

While the above state appellate court filings in connection with other cases were pending, Petitioner continued to pursue state habeas relief with respect to the Current Conviction.  He filed a habeas petition in the Ventura County Superior Court on or about December 26, 2006, which was denied on January 24, 2007.[3]  Approximately three months later, on May 3, 2007, Petitioner filed a habeas petition in the California Court of Appeal, which was denied on May 16, 2007 (Case No. B198655).  On June 18, 2007, Petitioner filed a habeas petition in the California Supreme Court, which was denied on November 14, 2007 (Case No. S153518).

While this state high court habeas petition was pending, Petitioner filed habeas petitions in the trial court in July and August 2007, which

---

[3]     The Court also takes judicial notice of its records and files in Case No. CV 07-3545-MMM (MAN), a federal habeas action filed by Petitioner, which is discussed *infra*.

were denied in August 2007.   On October 30, 2007, Petitioner filed a mandamus petition in the California Court of Appeal, which was denied on November 6, 2007 (Case No. B203273).   On December 17, 2007, Petitioner filed a habeas petition in the California Court of Appeal, which was denied on January 8, 2008 (Case No. B204387).   On February 11, 2008, Petitioner filed a habeas petition in the California Supreme Court, which was denied on July 9, 2008 (Case No. S160770).

While Petitioner was pursuing the above-noted state habeas challenges to the Current Conviction, he also repeatedly sought federal habeas relief in connection with the Current Conviction.   On August 18, 2006, Petitioner filed a Section 2254 habeas petition challenging the Current Conviction (Case No. CV 06-5199-MMM (MAN), the "06-5199 Action").   On October 19, 2006, the 06-5199 Action was dismissed with prejudice, in part, and without prejudice, in part, on the grounds that: Grounds One through Three constituted noncognizable and untimely attacks on a conviction sustained by Petitioner in 1982; and his Ground Four attack on the Current Conviction was unexhausted.   Petitioner did not appeal.

On May 31, 2007, Petitioner filed a second Section 2254 habeas petition challenging the Current Conviction (Case No. CV 07-3545-MMM (MAN), the "07-3545 Action").   On June 25, 2007, he filed an almost 100-page First Amended Petition in the 07-3545 Action, which alleged 26 habeas claims, including two claims (the 18th and 19th claims) that are the same as Grounds Two and Three of the instant Petition.   Respondent moved to dismiss the 07-3545 Action on the ground that 25 of the 26 alleged were unexhausted.   On April 21, 2008, the Court issued an Order

advising Petitioner:  that only two of the claims alleged (the two claims correlating to Grounds Two and Three of the instant Petition) were exhausted, and thus, the First Amended Petition was "mixed"; of his options given the "mixed" nature of his federal habeas petition; and that he was required to file an opposition to the motion to dismiss, and elect one of his available options, by no later than June 2, 2008. After Petitioner failed to respond or take any other action in the 07-3545 Action, the case was dismissed without prejudice on July 22, 2008, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, for lack of prosecution.

On February 12, 2008, Petitioner filed a federal civil rights action in this district (Case No. CV 08-790-MMM (MAN), the "Federal Civil Rights Action").  On screening, the complaint was dismissed with leave to amend.  Petitioner never filed an amended complaint.  On July 22, 2008, the Federal Civil Rights Action was dismissed without prejudice, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, for lack of prosecution.

At the same time that he pursued the Federal Civil Rights Action, Petitioner sought state habeas relief in the California Supreme Court, through a petition filed on February 11, 2008, which was denied on July 19, 2008 (Case No. S160770).[4]  Petitioner alleges that he filed a habeas petition challenging the Current Conviction in the Ventura County Superior Court around this same time, which was denied on January 8, 2008.  (Petition at 3-4.)

---

[4]   It is unclear to which of Petitioner's state convictions this state habeas petition pertained.

8

1    Approximately two years passed before Petitioner again sought state
2    habeas relief.  On February 18, 2010, he filed a habeas petition in the
3    California Court of Appeal, which was denied on February 25, 2010 (Case
4    No. B222263).  On May 27, 2010, he filed a habeas petition in the
5    California Supreme Court, which was denied on December 15, 2010, on
6    procedural grounds, including untimeliness (Case No. S183030).[5]    On
7    November 30, 2011, Petitioner filed another habeas petition in the
8    California Supreme Court, which was denied on procedural grounds on
9    April 11, 2012, again on the basis that it was untimely (Case No.
10   S198372).[6]

11

12   Over four months later, Petitioner signed and mailed the instant
13   Petition.

14

15              **DISMISSAL APPEARS WARRANTED DUE TO UNTIMELINESS**

16

17   Were the Court to screen the Petition pursuant to Rule 4 of the
18   Rules Governing Section 2254 Cases in the United States District Courts,
19   dismissal would be required.  As the foregoing recitation of events
20   makes clear, certain of Petitioner's claims are patently frivolous.

21

22

---

23   [5]    The California Supreme Court denied this petition by citation
24   to, *inter alia*, In re Robbins, 18 Cal. 4th 770, 780 (1998).  The
     California Supreme Court's citation to Robbins constituted a ruling that
     the petition was untimely.  Thorson v. Ramirez Palmer, 479 F.3d 643, 645
25   (9th Cir. 2007)(holding that a Robbins citation at the pinpoint citation
26   noted above constitutes a "clear ruling" by the state court that the
     petition is untimely).

27   [6]    The California Supreme Court again cited Robbins, 18 Cal. 4th
28   at 780, in summarily denying relief, as well as In re Clark, 5 Cal. 4th
     750, 767-69 (1993).

1    For example, Ground One asserts that Petitioner's counsel provided
2  ineffective assistance by failing to make a *Romero* motion.  However, as
3  the California Court of Appeal's opinion on direct appeal makes clear,
4  Petitioner claimed on appeal that the trial court erred in denying the
5  *Romero* motion made by his counsel.  Petitioner's Ground Four assertion
6  that California's Three Strikes law violates the Sixth Amendment is
7  unavailing, because Petitioner does not complain that any Sixth
8  Amendment violation occurred in connection with his sentence.  The
9  record shows that Petitioner admitted having sustained multiple prior
10 "strikes," and he does not allege that the trial judge engaged in any
11 impermissible factfinding at sentencing.  Petitioner's Ground Five claim
12 -- that he has been deprived of due process and equal protection
13 because, unlike defendants in death penalty cases, he did not have his
14 sentence determined by a jury -- is meritless.  Petitioner is not
15 similarly situated to capital defendants, and there is no due process
16 right to have a jury impose sentence in a noncapital case.

17

18   Finally, even if, *arguendo*, Petitioner could prove, as he alleges
19 in Grounds Two and Three, that his above-described Battery Conviction
20 does not meet the requirements for serving as a "strike," he would not
21 be entitled to habeas relief.  As the California Court of Appeal
22 determined, Petitioner had numerous prior convictions that constituted
23 "strikes" -- including for involuntary manslaughter and first degree
24 burglary -- at the time he was sentenced in connection with the Current
25 Conviction.  Moreover, Petitioner admitted to *three* prior "strike"
26 convictions, and even if the Battery Conviction was one of the three,
27 the existence of the two other admitted prior "strike" convictions was
28 sufficient to support his Three Strikes sentence.  Thus, even if the

10

Battery Conviction was treated as a "strike" erroneously, any such alleged error would be harmless. *See, e.g.,* <u>Washington v. Recuenco</u>, 548 U.S. 212, 221-22, 126 S. Ct. 2546, 2553 (2006)(sentencing error is subject to harmless error analysis); <u>Butler v. Curry</u>, 528 F.3d 624, 648-49 (9th Cir. 2008)(with respect to an alleged Sixth Amendment sentencing violation, for purposes of harmless error analysis, the relevant question is whether the trial court legally could have imposed the sentence the petitioner received).

Thus, Rule 4 screening of the Petition would require dismissal, although possibly with leave to amend. However, the expenditure of limited Court resources on screening both the Petition and possible future amended petitions would be inappropriate and unwarranted if this action is untimely. For the reasons set forth below, it appears virtually certain that the Petition is untimely.

*The Accrual And Running Of Petitioner's Limitations Period:*

The one-year limitations period that governs the Petition is set forth in 28 U.S.C. § 2244(d)(1). The California Supreme Court denied review on June 14, 2006, and there is no evidence that Petitioner sought a writ of *certiorari* in the United States Supreme Court. Accordingly, Petitioner's state conviction became "final" 90 days later, *i.e.*, on September 12, 2006. *See* 28 U.S.C. § 2244(d)(1)(A); <u>Zepeda v. Walker</u>, 581 F.3d 1013, 1016 (9th Cir. 2009). Therefore, Petitioner had until September 12, 2007, to file a timely federal habeas petition. As the

11

instant Petition was not "filed" until August 19, 2012,[7] it was untimely by almost five years, absent an application of tolling sufficient to render it timely.

*Statutory Tolling:*

28 U.S.C. § 2244(d)(2) suspends the limitations period for the time during which a "properly-filed" application for post-conviction or other collateral review is "pending" in state court. Additionally, in appropriate circumstances, applications for state post-conviction relief filed in an upward progression may be deemed "pending" under Section 2244(d)(2) "even during the intervals between the denial of a petition by one court and the filing of a new petition at the next level, if there is not undue delay." Biggs v. Terhune, 339 F.3d 1045, 1046 (9th Cir. 2003); *see also* Carey v. Saffold, 536 U.S. 214, 217-25, 122 S. Ct. 2134, 2137-41 (2002)(for purposes of California's "original" habeas petition system, "pending" covers the time between the denial of a petition in a lower court and the filing, "within a reasonable time," of a "further original state habeas petition in a higher court"). Such tolling is what is commonly referred to as interval, or gap, tolling.

---

[7]   The Petition was received by the Clerk's Office on September 4, 2012, and formally filed on September 10, 2012. The envelope in which it arrived bears a postmark date of August 28, 2012, although the back of the envelope indicates that a correctional officer received it for mailing on August 19, 2012. "Under the 'mailbox rule,' a pro se prisoner's filing of a state habeas petition is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of the court." Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003); Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010); *see also* Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts. The Court will assume, for argument's sake, that August 19, 2012, is the Petition's "filing" date pursuant to the mailbox rule.

1    As described earlier, following the conclusion of his appeal,
2 Petitioner did seek state habeas relief with respect to the Current
3 Conviction -- through multiple, overlapping proceedings commencing on
4 December 26, 2006 -- while his limitations period was running from
5 September 13, 2006, through September 12, 2007.  The Court does not have
6 the full state record before it and, thus, cannot determine whether
7 Petitioner, in fact, is entitled to Section 2244(d)(2) tolling for *all*
8 the state petitions he filed.  For the sake of argument, however, the
9 Court will assume that he is.  Petitioner's limitations period ran for
10 104 days prior to the December 26, 2006 filing of Petitioner's first
11 trial court habeas petition (*i.e.,* from September 13, 2006, through
12 December 25, 2006), leaving 261 days remaining.  Assuming, *arguendo*,
13 that Petitioner could receive continuous gap tolling from December 26,
14 2006, through the July 19, 2008 denial of his habeas petition filed in
15 California Supreme Court Case No. S160770,[8] his limitations period
16 recommenced running on July 20, 2008, and expired 261 days later on
17 April 6, 2009 -- over ten months before Petitioner again sought state
18 habeas relief.

19

20    Petitioner cannot receive interval tolling for the gap in time
21 between the July 19, 2008 denial of his habeas petition filed in
22 California Supreme Court Case No. S160770 and the February 10, 2010
23 filing of another habeas petition in the California Court of Appeal in
24 Case No. B222263, because the latter petition was not filed in an upward
25 progression, and in any event, Petitioner's limitations period expired

26

27    [8]   As noted earlier, it is unclear that this habeas petition even
relates to the Current Conviction.  However, to construe the existing
28 record most liberally in Petitioner's favor, the Court will assume that
it does, absent evidence otherwise.

in the interim.  *See, e.g.,* <u>Laws v. Lamarque</u>, 351 F.3d 919, 922 (9th Cir. 2003)("because [petitioner] did not file his first state petition until after his eligibility for federal habeas had already elapsed, statutory tolling cannot save his claim in the first instance"); <u>Ferguson v. Palmateer</u>, 321 F.3d 820, 823 (9th Cir. 2003)("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); <u>Jiminez v. Rice</u>, 276 F.3d 478, 482 (9th Cir. 2001)(state habeas petition filed "well after the AEDPA statute of limitations ended" did not save federal petition from being untimely).

In addition, Petitioner cannot receive statutory tolling for the habeas petitions he filed in the California Supreme Court in May 2010 (Case No. S183030) and November 2011 (Case No. S198372), because as noted earlier, both petitions were denied as procedurally barred by their untimeliness.  "A summary denial citing *Clark* and *Robbins* means that the petition is rejected as untimely." <u>Walker v. Martin</u>, ___ U.S. ___, 131 S. Ct. 1120, 1126 (2011).  It is abundantly clear that when a state court finds a postconviction filing to be untimely, it is not "properly filed" for purposes of Section 2244(d)(2) and, thus, cannot serve as a basis for statutory tolling.  *See* <u>Allen v. Seibert</u>, 552 U.S. 3, 6, 128 S. Ct. 2, 4 (2007)(*per curiam*)("a state postconviction petition is . . . not 'properly filed' if it was rejected by the state court as untimely"); <u>Evans v. Chavis</u>, 546 U.S. 189, 192-201, 126 S. Ct. 846, 849-54 (2006)(state petitions held to be untimely under California law were not "pending" under Section 2244(d)(2)); <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 414, 125 S. Ct. 1807, 1812 (2005)("[w]hen a postconviction petition is untimely under state law, that [is] the end of the matter

1    for purposes of § 2244(d)(2)"); <u>Lakey v. Hickman</u>, 633 F.3d 782, 785-86

2    (9th Cir. 2011)("we have consistently held that statutory tolling 'is

3    unavailable where a state habeas petition is deemed untimely under

4    California's timeliness standards'")(citation omitted), *cert. denied* 131

5    S. Ct. 3039 (2011); <u>Thorson</u>, 479 F.3d at 645 (if the California Supreme

6    Court denies a habeas petition as untimely, application of Section

7    2244(d)(2) is precluded).

8

9        In considering the statutory tolling issue, the Court has made a

10   series of assumptions substantially favoring Petitioner, even though

11   there is a significant question about whether he actually is entitled to

12   receive this assumed lengthy period of continuous statutory tolling.

13   Even with the benefit of such favorable assumptions, however, it is

14   clear that Petitioner's limitations period was statutorily tolled to no

15   later than July 19, 2008, and thus, expired by April 6, 2009, at the

16   latest -- over three years before the Petition was "filed."

17   Accordingly, statutory tolling alone cannot render the Petition timely.

18

19   *Equitable Tolling:*

20

21        The Supreme Court has made clear that the one-year limitations

22   period established by Section 2244(d)(1) may be equitably tolled in

23   appropriate circumstances. <u>Holland v. Florida</u>, ___ U.S. ___, 130 S. Ct.

24   2549, 2560-62 (2010). However, application of the equitable tolling

25   doctrine is the exception rather than the norm. *See, e.g.,* <u>Waldron-</u>

26   <u>Ramsey v. Pacholke</u>, 556 F.3d 1008, 1011 (9th Cir. 2009)(characterizing

27   the Ninth Circuit's "application of the doctrine" as "sparing" and a

28   "rarity"); <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir.

1999)("equitable tolling is unavailable in most cases").  "Indeed, the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)(internal quotation marks and citation omitted); *see also* Lakey, 633 F.3d at 786 (noting the "necessity" of a "high threshold" for application of the equitable tolling doctrine).

As the Supreme Court has explained, a habeas petitioner may receive equitable tolling only if he "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland, 130 S. Ct. at 2562 (citation omitted); *see also* Pace, 544 U.S. at 418 and n.8, 125 S. Ct. at 1814 and n.8.  Both elements must be met. *Id.* at 418, 125 S. Ct. at 1814-15 (finding that the petitioner was not entitled to equitable tolling, because he had not established the requisite diligence).  A petitioner seeking application of the doctrine bears the burden of showing that it should apply to him. *Id.*; *see also* Lawrence v. Florida, 549 U.S. 327, 336, 127 S. Ct. 1079, 1085 (2007)(observing that, to receive equitable tolling, the petitioner must prove the above two requirements).

Petitioner has not alleged any basis for applying the equitable tolling doctrine, and none appears possible.  As the foregoing description of Petitioner's numerous state and federal filings makes plain, from the time he sustained the Current Conviction, Petitioner was not impeded from pursuing relief.  While his appeal of the Current Conviction was pending, Petitioner filed five habeas petitions in the California Court of Appeal on a *pro se* basis, as well as a *pro se*

petition for review in the California Supreme Court.  Once his appeal ended, starting in late 2006, Petitioner commenced a series of *pro se* state habeas and other postconviction filings challenging the Current Conviction that ran from 2006 through 2012.  During 2006 through 2007, in connection with at least two separate actions in the Los Angeles Superior Court, he repeatedly sought, on a *pro se* bases, relief in the California Court of Appeal related to adverse decisions he received in these actions.  Petitioner also twice sought federal habeas relief with respect to the Current Conviction, filing the 06-5199 Action in August 2006, and the 07-3545 Action in May 2007.  Moreover, as noted above, Petitioner was able to allege 26 habeas claims in the 07-3545 Action, two of which are the same as claims alleged in the instant Petition. Further, in February 2008, Petitioner filed the Federal Civil Rights Action in this Court.

In short, immediately following the Current Conviction and through his most recent state habeas filing on November 20, 2011, Petitioner has been an extremely active *pro se* litigant in both the California courts and this Court.  There simply is no credible basis upon which the Court could find that he satisfies the first prong of the equitable tolling doctrine, because he plainly was *not* impeded by any extraordinary circumstance from timely seeking relief with respect to the Current Conviction.  Indeed, as of August 18, 2006 (when he filed the 06-5199 Action) and May 31, 2007 (when he filed the 07-3545 Action raising 26 claims attacking the Current Conviction), Petitioner plainly *was* able to seek federal habeas relief on a timely basis.

The Court acknowledges that there is an approximate two year gap

17

between Petitioner's February 11, 2008 filing in California Supreme Court Case No. S160770 (denied on July 19, 2008) and his next state habeas filing on February 18, 2010, in California Court of Appeal Case No. B222263 (denied one week later). Petitioner has not explained this delay. Even if, however, Petitioner were to proffer an explanation for this lengthy delay that could implicate the equitable tolling doctrine, his limitations period could not be equitably tolled beyond the date on which he mailed the habeas petition filed in the California Court of Appeal on February 18, 2010, because that filing demonstrated that, as of February 2010, he was not impeded by any extraordinary circumstance from seeking relief. Even with generous application of the equitable tolling doctrine, once the California Court of Appeal denied relief on February 25, 2010, Petitioner's limitations period would have commenced running again and expired, at the latest, 261 days later,[9] *i.e.*, on November 23, 2011. Given that Petitioner filed another habeas petition in the California Supreme Court on or about that date (Case No. S198372, filed November 30, 2011), he could not tenably claim any further entitlement to equitable tolling.

In sum, no matter how many assumptions the Court makes in Petitioner's favor (many of which might prove to be unwarranted), and how many scenarios favorable to Petitioner it hypothesizes, it is plain that the Petition is untimely by at least nine months, if not by several

_____

[9]      As discussed above, the Court has speculated that Petitioner might be able to receive continuous statutory tolling that would run until July 19, 2008, leaving 261 days remaining in his limitation period. Thus, if Petitioner were to demonstrate a basis for equitable tolling that commenced prior to July 19, 2008, and extended thereafter, he still might have 261 days remaining in his limitations period once his entitlement to equitable tolling ended in connection with his February 18, 2010 state habeas filing.

1  years.   District courts are permitted to consider, *sua sponte*, whether
2  a petition is untimely and to dismiss a petition that is untimely on its
3  face after providing the petitioner with the opportunity to be heard.
4  Day v. McDonough, 547 U.S. 198, 209, 126 S. Ct. 1675, 1684 (2006);
5  Wentzell v. Neven, 674 F.3d 1124, 1126 (9th Cir. 2012).   Accordingly,
6  Petitioner is ORDERED TO SHOW CAUSE why this action should not be
7  dismissed on the ground of untimeliness.   **By no later than November 21,**
8  **2012**, Petitioner shall file a response to this Order To Show Cause.   If
9  Petitioner concedes that this action is untimely, he shall state this
10 concession clearly.   If Petitioner disputes that this action is
11 untimely, he must explain clearly and in detail why it is not untimely,
12 and provide any available competent evidence that establishes the
13 timeliness of this action.

14

15     **Petitioner is explicitly cautioned that his failure to comply with**
16 **this Order will be deemed to constitute a concession that this action is**
17 **untimely and may be dismissed on that ground.**

18

19     IT IS SO ORDERED.

20

21 DATED: October 18, 2012.

22

23                                    _____
                                          MARGARET A. NAGLE
24                                    UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                      19